Good morning, Your Honors. William E. Levin, Levin & Dictoro, Laguna Beach for the Plaintiff and Appellants, VBS. And with the Court's permission, if I could reserve five minutes for rebuttal. Well, give it a try, and the clock counts down. Okay. I'm sorry, could you pull the microphone a little closer? Oh, yes, I'm sorry, Your Honor. I tend to be a little soft-spoken. This is a case, Your Honor, of preliminary injunction where, unfortunately, and with all due respect to the District Court, the Court got it all wrong. And there's one major pervasive flaw that runs throughout the Court's order, which is that the Court did not give weight, and it basically ignored the Plaintiff's undisputed evidence. And they actually gave weight and looked at non-evidence in the case from the defendants, such as statements in their brief. And I'd like to have just one illustration to point out exactly how this occurred on one of the major issues in the case, which is the false advertising claim, whether the defendant's products falsely advertised in their ads, that when they said 100% natural herbal or 100% herbal ingredients. And I think that the issue is very simple. Did VBS show that cows, pigs, and chickens are not herbs or plants? And if we did introduce evidence and show that, then that's a false advertisement. If the Court looks at the ruling on page in the record, ER7, the lower court had only one reason for the false advertising on that particular claim. And what they said, two things they pointed out to from the record. They said that we argue that it's false because the product in question, the defendant's product, ARTHOS-7, included collagen and gelatin, which are animal products. Then they said, well, the defendant claims in their brief only, because there was no support for it, that, well, dietary supplement industry, that's been extended. Herbs can include animal products. So if we look at their, and then they say we don't cite any support to prove that the claim is false, that 100% herbal ingredients or 100% natural herbal, that it's false, that it includes animal products, their product. If you look at their, the brief of the plaintiff, this is ER290. In fact, we identify exhibits three to five, as well as paragraphs from the First Amendment complaint. And those clearly show, they're the actual advertisements of the defendants, saying 100% herbal natural, 100% herbal ingredients on their advertising and on their packaging. They also, in their very small print, and this is shown in the advertisements themselves, indicate that they contain collagen and the other ingredient that are animal products. So we think that we have shown that their statements are literally on their face false. Now in defense, and the court said there's no support for this, the defendants in their brief, ER134, simply say, well, the FDA has defined natural as nothing artificial or synthetic. So for 100% herbal ingredients, that would mean that the herbs are not synthetic. I get your point. Could you talk about the trade dress issue? Could you talk about the trade dress issue? Yes, Your Honor, I'm happy to. That one seems to me a little more complex. Yes, Your Honor, and I'm happy to address that. I have a treatise I write on that, so I'm comfortable with it. On the trade dress, again, the court only had one very narrow ground for saying that we were not likely to prevail on the trade dress. And that ground, they basically said, well, everything has a function, and we haven't introduced any evidence that it's not functional. That just because we show that there are many alternatives, different ways that competitors could design it, that's not sufficient. And I would strongly disagree with that. But let me direct the court to exactly what the district judge said. On the trade dress, on page ER6, he identified the different parameters and cited the Millennium Labs case, which I think illustrates our point very well as to why we did show that it's nonfunctional. And, first of all, he treats it as a product configuration. And he clearly talks about it as a product configuration, and he treats it that way, which is the wrong way to look at this, because it's not a product configuration. It's not a product design or configuration, which have different standards, and it's much stricter, and you do have to be more concerned about functionality. And it is applied more strictly and in a different way. It's much easier to find that packaging or restaurant or service decor or trade dress is nonfunctional than it is for, you know, product feature or design. So that's the first mistake that the court made was looking at it as if it were a configuration, a product configuration. The second was... But that is an example of product configuration. Yes, Your Honor. In the ceiling in many buildings, there's little fire hydrant sprinkler heads. That would be a product design, a sprinkler head. And I was actually an expert witness in a case where that was an issue. Is it functional? Is it distinctive? People in that industry could look at it and tell if that was a particular company that made that. This microphone would be a product design if it was distinctive. But it's not a service business. It's not a restaurant. It's not like the Ninth Circuit. This court has looked at the click billiards, the pool hall. It's not... Those are not product designs or product configurations. Those are treated as services or packaging, more like packaging, restaurants, packaging, like a television station, in this case, broadcasting a show. It would be like saying that, to use a different example, the show Gunsmoke, for example. There's many, many different westerns, but they have different looks. They have a whole different presentation, and everything about them is different. So in this case, what the district court did was it looked at only one thing. It said that the list of elements all go to the overall configuration of the show, and we haven't presented reliable evidence that this is nonfunctional. And merely because there are alternative functional choices doesn't make it a protectable trade dress. Well, if you look, Your Honor, at the test that the Ninth Circuit has used, and we even cited the Ninth Circuit jury instructions on trade dress, on functionality in our brief, you have two steps, but you have four things to look at. We put in undisputed evidence through Mr. Wynn's declaration, which was undisputed, that it was not functional. It wasn't chosen for any purpose, that it didn't make the price less. It wasn't essential to the use of the product. For example, the length of the show. It was two hours. Is there any case applying the rule that we have for what clicks billiards or a restaurant to a television show? There were several cases cited involving trade dress for TV shows, but I'm not ‑‑ I don't know that in this circuit that it's been specifically applied to a TV show other than the couple of cases that were cited, and there the only issue was the relationship between copyright law. We're not talking about the visual audio content, the script of the show, which was protected by copyright wouldn't be trade dress. So I don't know that there is such a case, Your Honor. You would be asking us to extend to this sort of show, this sort of television show, auction show. I'm sorry, Your Honor? You would be asking us to extend that rule to an auction style television show. Is that right? Well, extend it, but the rule that's applied, Your Honor, to everything other than product configurations and product designs is the Supreme Court in a series of cases has talked about the differences. For example, they've looked at color. They've looked at restaurants. They've looked at product designs, you know, traffic signs, and anything that's not a product design or configuration where you have special considerations about functionality and balancing competitive need is looked at differently, whether it's a TV show or ‑‑ but the closest, just to give one example, Millennium, which was 2016, was basically a single graph in a urine analysis test, and a competitor was using ‑‑ changed to use a single graph to show how to read the test results. Your time is running, the time you're seeking to preserve, and I'm about to make your life more difficult on that score. Could you address the harmless error? As I read the district court, he's saying, even if I were to go the other way, I find no harmless error because this is something that can be taken care of post‑talk by damages. Would you address that? Yes, Your Honor. There's no longer any presumption, but the rule for many years in these kinds of cases, trademark, trade dress infringement, intellectual property rights, is that by their nature, the types of things that occur here are generally irreparable harm. Now we have to produce evidence to show that under winter, and we have, for example, reputation and goodwill. We have shown that there's actual confusion between the shows and the marketplace. People are watching one show and then calling the other show, which has a totally different number, to order the product. When you have actual confusion, that is evidence. I didn't see any surveys in the record. What I saw was a few anecdotal incidents. Is there anything more than that of confusion? Well, Your Honor, you could survey actual confusion, but that's usually not done at the preliminary injunction stage, although there are cases on both sides of that issue. None was done here at this stage. But that wasn't the issue that the judge said there is no evidence of actual confusion. So he didn't say I'm not going to give it much weight or it's hearsay. He said there's no evidence of actual confusion. We had five different declarations, or six, actually, that pointed out specific customers calling in, and it happens over and over, and what they're saying and how they're confused and coming to pick up products at our client's office from the other show. So this is strong evidence of actual confusion. That shows that there is damage to reputation. There is loss of control over reputation when you have those kinds of problems occurring in the marketplace, and you don't need a survey to prove that, particularly on a preliminary injunction. What's the best case post the presumption for this sort of, I think there were a vendor and several employees saying that they received calls from individuals who were confused. What's the best case for saying that that would amount to be sufficient evidence of irreparable harm? I know other than that, I think you had the declaration from Mr. Wynn. But what's your best case on that? Your Honor, there were a few. In our reply brief, there was Warner Brothers. There was Mustang Ranch. There was, on page 24 of our brief, we had a series of, let's see if I can find the, excuse me. That was in your gray brief? I'm sorry, Your Honor? Your gray brief, your reply brief, or your? In the reply brief, on page 24, Warner Brothers. And before that, there was several others. It may have been in the opening brief as well. Mustang Ranch was another one. But there are many cases that talk about the actual confusion. We cited four or five of them. Okay. Well, we've taken you down to 30 seconds. We have manifestly failed you in your attempt to save five. Let's hear from the other side. We'll give you a chance to say what you need to say. Thank you, Your Honor. Good morning, Gunners. And may it please the Court, my name is Daniel Dokon. And I am counsel for the appellees. One thing that we haven't addressed that I think is very important in this case with respect to the appeal, that counsel had just kind of jumped in and talked about the evidence, is the standard of review. With respect to the factual issues that are in dispute here, which seem to predominate the appellant's arguments, the factual determinations of the district court are reviewed under the abuse of discretion. And with respect to the factual errors that are alleged, they're reviewed for whether or not they're clearly erroneous. And so much deference is given to the court, the lower court, with respect to findings of fact. And so really the crux of this appeal is the appellants don't agree with the lower court's findings of fact, or the weight of the evidence, as they say they've presented. And so at the very core of this is really looking at the evidence that was presented. The appellant's view is that they presented sufficient evidence, or in their words, a mountain of evidence. But really what it was was five or six declarations and some scant exhibits to prove a very extraordinary requested relief, and that is a preliminary injunction. And if you go further and look at what they're asking for with respect to what they want enjoined, you know, you're talking about not preserving the status quo or, you know, preventing irreparable harm. You're talking about, you know, taking a person out of their job, taking a TV show off the air, preventing a product from being marketed that has been marketed since 1998. What happens if we were to disagree with the factual findings of the district judge first as to trade dress, which is not just disagreement with the factual finding, but apparently the district judge, according to the other side, didn't apply the standard correctly. So let's assume we disagree on trade dress. Let's assume we disagree on trade secret, although we have not yet discussed that one. Let's assume that we disagree as to falsity of advertising with respect to herbal and with respect to the eight million bottles allegedly sold. But we sustain him with respect to doctor recommended. And we say it's looked to us as though there is irreparable harm within the meaning of the doctrine, and then send it back for the district judge to formulate the injunction in his discretion. Right or wrong? Your Honor, I think that difference... Your objection at the very end of the argument just before I asked the question was, well, they're asking for such extraordinary relief, that that's really impossible based upon the factual showing we have here. Well, what if we, as to those things in which I'm just signaling to you, on those points, that's where I'm inclined to come out as to what the actual underlying facts are, but then to leave it to the district judge to tailor appropriate relief, not necessarily giving them the entire injunction that they're seeking. Well, Your Honor, with respect to the evidence, assuming that the court does go that way... I don't ask you to concede on that point, of course. Right. On that point, certainly the court has the powers to review, but as far as the factual, if there was a factual determination that is in error and not an application of the law, my understanding would be that the court would remand for the lower court to make those determinations and proffer the proper terms of the injunction if that were to be the case. With respect to the clearly erroneous standard, I believe that the appellants are arguing that there is an incorrect legal standard here, that it should be reviewed de novo. However, the case law suggests otherwise. And, in fact, one of the cases that they cite stands for the proposition that on the issue of functionality, as we were talking about earlier in terms of trade dress, that functionality is one of those elements that is reviewed for clear error. And so with respect to looking at that analysis itself, whether or not the... This court would look at whether or not there was clear error in the court's determination that it was a product design or configuration with respect to the functionality. But I think the argument was that under Click's billiard standard, there can be individual elements that are functional, but that doesn't mean... So in Click's billiards, you have the lights light up, the pool table and the counter lets you put the bottle on the counter. But if you take the overall look and feel, that's what's nonfunctional. And the district court, their argument is the district court didn't apply that correct standard. And that would be, I take it, a legal error, not an actual error.  As Your Honor had indicated earlier, what case law would support that it would be more of Click's billiards and two pesos with respect to a TV show? But if Click's billiards and two pesos apply to an auction-style TV show of this sort, then do you disagree with opposing counsel that the district court applied the wrong standard and made a legal error? I don't agree that that would be the legal standard, you know, that would apply to this particular case, being that the court set out... But if it did, we would be looking at a legal error, right, as opposed to an actual error. Well, the facts would obviously dictate, you know, what legal, what case would apply. The facts here, as the court had pointed out, is they're saying that what's protected or should be protected is, you know, the dates that they choose to air, the days and the times, you know, the lighting and the particular camera angles. Well, it's like a restaurant. You created an auction-style TV show that's pretty closely identical to the one that we created. I mean, that's the argument. And you could have done something that was an auction of jewelry that looked pretty different, and it was different times and didn't seem to copy our format. And that, they say, lines up with the Click's billiard and two pesos cases. So what if the auction happened in, just in a building, not on television? And EBS creates an auction, and then there's a competing auction that take place at the same time or the same place. I mean, wouldn't, would Click's billiards apply in that situation? I think what's appreciated, you know, in a restaurant or a building is that, you know, the customer, the person that might be confused, is actually going in and appreciating the aesthetic effects of that environment. It's certainly a certain feel, whereas with a TV show, and certainly I don't believe that appellants are suggesting that an auction show on TV selling jewelry is unique. This is the first time we've ever seen it because there are plenty of shows on television right now that, you know, sell jewelry and sell it in an auction format. And, in fact, as appellants have pointed out and conceded that there are other shows that sell jewelry on, you know, the Vietnamese language television broadcasting stations. And so, you know, the look and feel with respect to a TV auction and the way they've described it, in particular the way they described it, is not equivocal to a setting where a customer would go in and have the aesthetic effects of the look and feel of a place. And the elements that they're describing here, as the lower district court had said, is that these are functional. These are choices, you know, that are functional. And so all they're saying, and actually the evidence was only a statement from the CEO of the company that says, oh, these are the things that we think are non-functional. In fact, you know, as the court had addressed earlier, nothing was really done to, you know, really go into. There was no data. There was no research that was presented, you know, with respect to, you know, the type of show, or that they had presented in some way to make an argument that it was, you know, non-functional. It was just a statement from their CEO. They're talking about non-functional, but that largely is a test that talks about product. That is to say, if it's a non-functional feature of a physical product, we treat that as possibly having to do with trade dress. But where you're dealing with a service with lots of alternatives, the functionality analysis is really quite different. Do you concede that? No, I don't, Your Honor. You're in trouble if you don't. The functionality that's chosen in this particular case is they're talking about a time slot. They're talking about, you know, the dates. They're talking about an option format. These are nothing that are unique. These are things that are substitutable. So even though they're substitutable. But colors are substitutable. I mean, various sort of designs are substitutable, but those things are trade dress even though they're non-functional. Right. So with respect to color, if VBS is arguing, if the opponents are arguing that they've placed something on the screen to make it identifiable as themselves. So, for instance, in a color, you would associate a certain color, let's say, with the Pfizer Centrum brand, you know, a certain color pill. Or you can say that Walmart has a certain color and design. VBS is not claiming that here. They're not actually claiming that. They're just claiming that there are certain things that they've chosen functionally that they want to protect. Well, no, they're claiming that they set up two women doing it on a table in front, a time slot. I mean, the look and feel of the show, they say, is sufficiently similar that this is a trade dress infringement. That's what they're saying. Your Honor, but the fact that they set up. Other factors that seem to overlap are very similar. Right, but let's say in that example they're setting up two women. There's a function there. They're setting up those two women to be able to present the auction. We wouldn't be able to say, let's say, on a newscast there was two anchors and there was another television show that set up two anchors. If you were to protect the format of having two anchors, and that's in perpetuity, that would not be in the spirit of trade dress protection. I understand that. All right. And then now, with respect to the four prongs of the announcers for a preliminary injunction, the likelihood of success on the merits, irreparable harm, balancing of the equities, and the public interest, the court went through all those prongs. And based on the evidence, the court found that the appellants did not, were not able to demonstrate either one of these elements, any one of these elements. And based on the facts, if you look at the finding and the ruling, the court does follow what evidence is presented and to base the court's decision on those findings. And so my argument here is that with respect to the legal standard, if there's a finding of clear error, and that is if the district court's findings was illogical, implausible, or had no reference to the record, then there would be a reason on abuse of discretion to overturn it. However, the court here did follow the basic steps that it needs to follow in order to make its ruling. It wasn't a situation where, and one of the cases cited here said, the court just right before trial said there wasn't enough, didn't feel like there was likelihood of success on the merits, and period, didn't reference anything else. But here, there was clear consideration by the court of the evidence that was presented, and the court made its findings. This would be reviewed in the district, in the Ninth Circuit here, based on a clear error standard. Unless you have any further questions, I would submit. Thank you. Could you put two minutes on the clock, please? Thank you. I just want to address a few of the things that came up during the questions. And one of the questions concerned if the case was remanded, based that the findings were wrong and for the judge to apply. I would think that this court, because there was no witnesses, there was no hearing, it's all based on this written record, that this court is in exactly the same position, and it should be a de novo standard because the facts aren't disputed. And it's basically, as Judge Kuda pointed out, a lot of legal questions. So I think that this court could take the proposed preliminary injunction, and we offered, during the preliminary injunction process, if the court thought it was too broad on something or wasn't, you know, to narrow it. And that could easily be done. A provision could be struck, and then that guidance and decision, I think. Let me understand what you're asking. You're asking us to draft the injunction? No, Your Honor, to reverse and remand. But if it's acceptable to enter the injunction because it's a de novo determination, and this court has all the facts. That sounds like you are asking us to draft the injunction. To revise the injunction that's there, yes. Okay. Well, I'm not speaking for my colleagues, but no thank you as to me. All right. I understand, Your Honor. All right. Then in terms of the standard of review, again, the facts were undisputed. They put in no exhibits, a small two-page declaration the court didn't consider. We think it's a de novo standard based on all the precedents we cited. I was asked about the actual confusion, and I did look at the brief, and it's page 11 of our reply brief, and the best case perhaps was Lahoti, a Ninth Circuit case, plus the other two that I mentioned. As far as the doctor, I would point out that in one of our briefs we did put in the FDA regulation, which makes it clear in the California statute that they cannot call a podiatrist a doctor, and that's misleading to the public. Thank you. Okay. Thank you very much. Thank both sides for their arguments. The case last argued is submitted.
judges: W. Fletcher, Ikuta, Freudenthal